IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **JOSE RODRIGUEZ,** and **ANWAR ABUTHAN,** on behalf of themselves and all other employees similarly situated, known and unknown, <br><br> Plaintiffs, <br><br> v. <br><br> **JOSROS ENTERPRISES, INC.,** an Illinois corporation, **ABS BUSINESS ENTERPRISES, INC.,** an Illinois corporation, **JOSEPH MATHEW,** individually, and **ANTONY JOSEPH,** individually, <br><br> Defendants. | Civil Action <br><br><br> No. <br><br><br><br> JURY DEMAND |

## COMPLAINT

By and through their attorneys of record and on behalf of themselves and all other similarly situated employees, known and unknown, the Plaintiffs, JOSE RODRIGUEZ and ANWAR ABUTHAN (the "Plaintiffs"), hereby complain of the defendants, JOSROS ENTERPRISES, INC., an Illinois corporation, ABS BUSINESS ENTERPRISES, INC., an Illinois corporation, JOSEPH MATHEW, individually, and ANTONY JOSEPH, individually, (collectively the "Defendants"). Pleading hypothetically and in the alternative, the Plaintiffs allege as follows:

I. **INTRODUCTION**

1. This action arises under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, as a result of the Defendants' failure to pay the Plaintiffs and other similarly situated employees of the Defendants (the "Collective Class") time and one-half

compensation for the overtime (in excess of 40 in any given week) hours they worked. In Count I, the Plaintiffs bring a claim pursuant to Section 216(b) of the FLSA.

2. In Count II, the Plaintiffs bring supplemental claims under the Illinois Minimum Wage Law, 829 ILCS 105/1 *et seq*.

## II. THE PARTIES

3. The Plaintiffs are individuals who are domiciled in the State of Illinois and reside within this judicial district.

4. The following defendants are individuals who are domiciled in Illinois and reside within the Northern District of Illinois: a) JOSEPH MATHEW; and b) ANTONY JOSEPH.

5. At all times relevant to this action, JOSROS ENTERPRISES, INC., and ABS BUSINESS ENTERPRISES, INC., are/were Illinois corporations that maintain/maintained their registered offices at or near 5756 W. Ogden Ave., Cicero, IL 60804.

6. At all times relevant to this action, JOSROS ENTERPRISES, INC., and ABS BUSINESS ENTERPRISES, INC., are/were Illinois corporations that maintain/maintained their principal place of business at or near 5756 W. Ogden Ave., Cicero IL 60804.

7. At all times relevant to this action, the following defendants are/were corporate officers of JOSROS ENTERPRISES, INC.: a) JOSEPH MATHEW; and b) ANTONY JOSEPH.

8. At all times relevant to this action, the following defendants are/were corporate officers of ABS BUSINESS ENTERPRISES, INC.: a) JOSEPH MATHEW; and b) ANTONY JOSEPH.

9. Upon information and belief, at all times relevant to this action, the following defendants hold/held an ownership interest in JOSROS ENTERPRISES, INC.: a) JOSEPH MATHEW; and b) ANTONY JOSEPH.

10. Upon information and belief, at all times relevant to this action, the following defendants hold/held an ownership interest in ABS BUSINESS ENTERPRISES, INC.: a) JOSEPH MATHEW; and b) ANTONY JOSEPH.

11. Upon information and belief, at all times relevant to this action, the following defendants exercise/exercised significant control over the day-to-day operations of JOSROS ENTERPRISES, INC., and ABS BUSINESS ENTERPRISES, INC.: a) JOSEPH MATHEW; and b) ANTONY JOSEPH.

12. At all times relevant to this action, the following defendants are/were managers at JOSROS ENTERPRISES, INC., and ABS BUSINESS ENTERPRISES, INC., and have/had the power to hire and fire employees, including the Plaintiffs: a) JOSEPH MATHEW; and b) ANTONY JOSEPH.

13. At all times relevant to this action, the following defendants have/had the power to set the work schedules of employees, including the Plaintiffs: a) JOSEPH MATHEW; and b) ANTONY JOSEPH.

14. At all times relevant to this action, the following defendants have/had the power to set the pay rates of employees, including the Plaintiffs: a) JOSEPH MATHEW; and b) ANTONY JOSEPH.

15. At all times relevant to this action, the following defendants have/had the power to set the manner and method by which employees are/were paid (*e.g.*, by check, in

cash, by the hour, on salary, etc.), including the Plaintiffs: a) JOSEPH MATHEW; and b) ANTONY JOSEPH.

### III. JURISDICTION AND VENUE

16. Federal question jurisdiction is conferred on this Court by Section 16(b) of the FLSA and 28 U.S.C. §1331.

17. Venue is proper as the acts or omissions that gave rise to the claims alleged herein occurred within this judicial district.

18. Further, venue is proper pursuant to 28 U.S.C. § 1391, as JOSROS ENTERPRISES, INC., and ABS BUSINESS ENTERPRISES, INC., have their registered offices, and principal places of business, at or near 5756 W. Ogden Ave., Cicero, IL 60804.

### IV. COLLECTIVE ACTION UNDER THE FLSA

19. The Plaintiffs bring this case as a Collective action under the FLSA on behalf of themselves and the Collective Class, and in accord with Section 16(b) of the FLSA, the Plaintiffs have given written consent to bring such an action (attached as **Exhibit A**).

### V. GENERAL ALLEGATIONS

20. At all times relevant to this action, the Defendants, and each of them, were the Plaintiff's "employer" within the meaning of Section 3(a) and (d) of the FLSA in that the Defendants act/acted directly or indirectly in the interest of the "employer" in relation to the employee plaintiffs represented herein, and are therefore jointly and severally liable for the unpaid wages and other relief sought herein.

21. At all times relevant to this action, the Plaintiffs were "employees" of the Defendants within the meaning of Section 3(e)(1) of the FLSA.

22. At all times relevant to this action, the members of the Collective Class are/were "employees" of the Defendants within the meaning of Section 3(e)(1) of the FLSA.

23. At all times relevant to this action, the Defendants operated, and continue to operate, a retail gas station commonly known as "Mobil" at or near 5756 W. Ogden Ave., Cicero, IL 60804.

24. Upon information and belief, the Defendants own and/or operate additional, retail gas stations, and/or other types of retail establishments, in Illinois (the "Retail Businesses").

25. JOSROS ENTERPRISES, INC. had gross receipts in excess of $500,000.00 in: a) 2007; b) 2008; c) 2009; d) 2010; e) 2011; f) 2012; g) 2013; h) 2014; i) 2015; j) 2016; and k) the twelve-month period between and including April 1, 2016 and March 31, 2017.

26. ABS BUSINESS ENTERPRISES, INC. had gross receipts in excess of $500,000.00 in: a) 2007; b) 2008; c) 2009; d) 2010; e) 2011; f) 2012; g) 2013; h) 2014; i) 2015; j) 2016; and k) the twelve-month period between and including April 1, 2016 and March 31, 2017.

27. Upon information and belief, the Retail Businesses had gross receipts in excess of $500,000.00 in: a) 2007; b) 2008; c) 2009; d) 2010; e) 2011; f) 2012; g) 2013; h) 2014; i) 2015; j) 2016; and k) the twelve-month period between and including April 1, 2016 and March 31, 2017.

28. JOSEPH MATHEW is listed in the Illinois Secretary of State's corporation database as the president and corporate secretary of JOSROS ENTERPRISES, INC.; and ANTONY JOSEPH is listed in the same database as the president and corporate secretary of ABS BUSINESS ENTERPRISES, INC.

29. JOSEPH MATHEW was born with a name other than "Joseph Mathew;" and ANTONY JOSEPH was born with a name other than "Antony Joseph."

30. JOSEPH MATHEW and ANTONY JOSEPH are brothers.

31. At all times relevant to this action, JOSEPH MATHEW and ANTONY JOSEPH (the "Joseph Brothers") structured their Retail Businesses such that, in most cases, the Joseph brothers create/created a new company to be the face of each retail establishment. However, each of these new companies performed related activities for a common business purpose: retail sales of gasoline and convenience items including cigarettes, other tobacco products, snacks, canned and bottled beverages, coffee and candy.

32. At all times relevant to this action, the various Retail Businesses that were run by the Joseph Brothers were managed centrally by the Joseph Brothers, whether or not these Retail Businesses were associated with separate corporations or limited liability companies.

33. Upon information and belief, at all times relevant to this action, the respective control groups of JOSROS ENTERPRISES, INC., ABS BUSINESS ENTERPRISES, INC., and the additional Retail Businesses (collectively, the "Corporate Entities") are and have been dominated by the Joseph Brothers.

34. Upon information and belief, the Joseph Brothers operated the Corporate Entities as if they were a single company that they controlled completely, moving money, goods, resources and employees between and among the various Corporate Entities at their pleasure.

35. Upon information and belief, at all times relevant to this action, the respective control groups of the Corporate Entities have consisted of substantially the same, if not an identical, group of individuals.

36. Upon information and belief, at all times relevant to this action, the respective administrative staffs of all or most the Corporate Entities have consisted of substantially the same, if not an identical, group of individuals.

37. Upon information and belief, at all times relevant to this action, the records of all or most of the Corporate Entities have generally been kept in the same, central location.

38. Upon information and belief, at all times relevant to this action, the Joseph Brothers have used the same computer, server or computer network, to keep the books of all or most of the Corporate Entities.

39. Upon information and belief, at all times relevant to this action, the respective sets of data, which constitute the books of all or most of the Corporate Entities, have resided on the same computer, server or computer network.

40. Upon information and belief, at all times relevant to this action, the same individual, or group of individuals, has/have performed the routine, day-to-day bookkeeping functions of all or most of the Corporate Entities.

41. During the course of their employment by the Defendants, the Plaintiffs and the Collective Class members handle/handled goods that moved in interstate commerce including but not limited to canned and bottled beverages, coffee, sugar, cigarettes and other tobacco products.

42. During the course of their employment by the Defendants, the Plaintiffs and the Collective Class were/are not exempt from the overtime wage and minimum wage provisions of the FLSA.

43. The plaintiff, JOSE RODRIGUEZ, was employed by the Defendants from about January, 2008, until about April, 2017, and the plaintiff, ANWAR ABUTHAN, was employed by the Defendants from about April, 2014, until about April, 2017.

44. During the course of their employment by the Defendants, the Plaintiffs worked as cashiers at the Defendants' Mobil gas station located at or near 5756 W. Ogden Ave., Cicero, IL 60804.

45. The Collective Class members consist of: a) the individuals whom the Defendants employed to replace the Defendants as cashiers at the Mobil gas station located at or near 5756 W. Ogden Ave., Cicero, IL 60804; and b) current and former employees of the Corporate Entities.

46. From the commencement of his employment to about, October, 2016, the Defendants allowed JOSE RODRIGUEZ to work 7 days per week, from 6:00 a.m. to 6:00 p.m. each day.

47. Occasionally, as all employees do, JOSE RODRIGUEZ would take days off and would arrive late or leave early but, for the most part, he kept the schedule described above; and, accordingly, between the commencement of his employment and about October, 2016, with rare exception, JOSE RODRIGUEZ worked about 84 hours per week.

48. In about October, 2016, JOSE RODRIGUEZ began to suspect that the long hours he worked was affecting his health and he requested that his hours be cut; and his hours were in fact cut.

49. In about October, 2016, the Defendants changed JOSE RODRIGUEZ's schedule to 7 days per week, from 10:00 a.m. to 6:00 p.m. each day;[1] and from about October, 2016, until the termination of his employment is April, 2017, JOSE RODRIGUEZ worked about 56 hours per week.

50. From the commencement of his employment until the termination of his employment in April, 2017, the Defendants allowed ANWAR ABUTHAN to work 7 days per week, from 6:00 p.m. to 6:00 a.m. each day.

51. Occasionally, as all employees do, ANWAR ABUTHAN would take days off and would arrive late or leave early but, for the most part, he kept the schedule described above; and, accordingly, between the commencement of his employment and about April, 2017, with rare exception, ANWAR ABUTHAN worked about 84 hours per week.

52. During the course of their employment by the Defendants, the Defendants paid the Plaintiffs on an hourly basis for their labor: a) the Defendants paid JOSE RODRIGUEZ $10.00 per hour for his labor; and b) the Defendants paid ANWAR ABUTHAN $9.50 per hour for his labor.

### The Defendants' Scheme to Avoid Paying Overtime Compensation

53. The Defendants paid the Plaintiffs with a combination of cash and checks.

54. Between the commencement of his employment and about January, 2017, the Defendants paid JOSE RODRIGUEZ for 30 hours of work each week by check; and, during this period, the Defendants paid JOSE RODRIGUEZ for the rest of the hours he worked each week in cash.

---

[1] The Defendants hired another person to work part-time in the mornings from 6:00 a m. to 10:00 a.m.

55. Between about January, 2017, and the termination of his employment in April, 2017, the Defendants paid JOSE RODRIGUEZ for about 35 hours of work each week by check; and, during this period, the Defendants paid JOSE RODRIGUEZ for the rest of the hours he worked each week in cash.

56. Between the commencement of his employment and the termination of his employment in April, 2017, the Defendants paid ANWAR ABUTHAN for 30 hours of work each week by check; and, during this period, the Defendants paid ANWAR ABUTHAN for the rest of the hours he worked each week in cash.

57. The Defendants did not utilize a punch card system, computer log-in system, biometric log-in system or any other kind of system with which the Plaintiffs and the Collective Class members could clock in and out, and thereby generate and independent record of their work hours.

58. Instead, the Defendants simply kept a log of the hours that the Plaintiffs worked, which log was generated entirely by the Defendants without the Plaintiffs' input; and the Defendants failed and refused to provide a copy of to this log to the Plaintiffs.

59. In particular, at about the time his employment by the Defendants was terminated, JOSE RODRIGUEZ asked ANTONY JOSEPH for a copy of the log of the hours he had worked, but ANTONY JOSEPH refused to provide a copy to JOSE RODRIGUEZ.

60. JOSE RODRIGUEZ had requested a copy of the log because, among other things, he had contemplated obtaining a loan and had wanted to use the logs to show the hours he had actually worked – because the checks he received from the Defendant only reflected pay for less than half of the hours he actually worked each week.

61. Rather than provide JOSE RODRIGUEZ with a copy of the log as he had requested, ANTONY JOSEPH instead gave JOSE RODRIGUEZ and ANWAR ABUTHAN each an IRS Form 1099; but the amount of money listed on the Forms 1099, for JOSE RODRIGUEZ and for ANWAR ABUTHAN, respectively, (ostensibly the amount of money that the Defendants had paid to the Plaintiffs for the year/s listed on the Forms 1099) was false in each case. The amount/s of money listed on the Forms 1099 described above did not accurately reflect the amount of money that the Defendants had paid the Plaintiffs in the periods indicated on the forms.

62. The Defendants used the methods described above (using a combination of cash and checks to pay the Plaintiffs; failing to utilize a punch card or log-in system; failing to provide the Plaintiffs with a copy of the log; providing the Plaintiffs with IRS Forms 1099 that contained false information) as part of their scheme to avoid paying their employees, including the Plaintiffs, overtime compensation at the rates required by law; and, upon information and belief, the Defendants have used, and may attempt to use, these methods to hide their illegal payroll practices.

63. Upon information and belief, the Defendants use/used the same illegal payroll practices relative to the Collective Class members as they did with the Plaintiffs.

64. The Defendants failed and refused to pay the Plaintiffs at rates not less than one and one-half times their respective, regular hourly rates for the overtime (in excess of 40 hours in any given week) hours that they worked.

65. Upon information and belief, the Defendants failed and refused to pay the Collective Class members at rates not less than one and one-half times their respective,

11

regular hourly rates for the overtime (in excess of 40 in any given week) hours that they worked.

66. Upon information and belief, the Defendants continue the practice of failing to pay overtime compensation to the Collective Class members through the present day.

## COUNT I
### (Violation of the FLSA)

67. The Plaintiffs re-allege the foregoing paragraphs.

68. Among other ways, the Defendants violated the FLSA by:

   a. failing to pay the Plaintiffs at a rate not less than one and one-half times their respective, regular hourly rates for the overtime hours they worked;

   b. failing to provide the Plaintiffs with pay stubs that accurately listed their hourly wage rates and the number of hours they worked each week;

   c. failing to accurately record the number of hours that the Plaintiffs worked each week; and

   d. failing to hang and display a poster in a prominent location accessible to the Plaintiffs, which poster would have informed the Plaintiffs of their rights under the FLSA.

69. Among other ways, the Defendants also violated the FLSA by:

   a. failing to pay the Collective Class members at rates not less than one and one-half times their respective, regular hourly rates for the overtime hours they worked;

   b. failing to provide the Collective Class members with pay stubs that accurately list/listed their respective hourly wage rates and the number of hours they work/worked each week;

   c. failing to accurately record the number of hours that the Collective Class members work/worked each week; and

   d. failing to hang and display a poster in a prominent location accessible to the Collective Class members, which poster would have informed the Collective Class members of their rights under the FLSA.

70. The Defendants' violation of the FLSA was willful in that the Defendants were aware or should have been aware of their obligations under the FLSA, but nevertheless attempted to circumvent its provisions.

71. The Defendants failed to take affirmative steps to ascertain their obligations under the FLSA.

WHEREFORE the Plaintiffs, on behalf of themselves and the Collective Class, pray for judgment in their favor and against the Defendants, and each of them, and for the following relief:

A. damages in an amount equal to the unpaid overtime compensation due and owing to the Plaintiffs for each hour the Plaintiffs worked in excess of 40 in any given week, but for which the Defendants failed to pay the Plaintiffs at rates not less than one and one-half times their respective regular, hourly rates (in no case less than one and one-half times the IMWL's mandatory minimum rate);

B. statutory liquidated damages as allowed by the FLSA;

C. interest on all amounts awarded;

D. attorneys' fees, together with costs of suit and collection; and

E. such further relief as may be fair and just in the premises.

### COUNT II
### (Violation of the IMWL)

72. The Plaintiffs re-alleges the foregoing paragraphs.

73. Any and all Collective Class members who join this action under the "opt-in" procedure set forth in 29 U.S.C. 216(b) will also affirmatively adopt the allegations in this Count II.

74. Among other ways, the Defendants violated the IMWL by:

a. failing to pay the Plaintiffs at a rate not less than one and one-half times their respective, regular hourly rates for the overtime hours they worked;

    b. failing to provide the Plaintiffs with pay stubs that accurately listed their hourly wage rates and the number of hours they worked each week;

    c. failing to accurately record the number of hours that the Plaintiffs worked each week; and

    d. failing to hang and display a poster in a prominent location accessible to the Plaintiffs, which poster would have informed the Plaintiffs of their rights under the IMWL.

75. The Defendants were aware or should have been aware of their obligations under the IMWL, but nevertheless attempted to circumvent its provisions.

76. The Defendants failed to take affirmative steps to ascertain their obligations under the IMWL.

WHEREFORE the Plaintiffs pray for judgment in their favor and against the Defendants, and each of them, and for the following relief:

    A. damages in an amount equal to the unpaid overtime compensation due and owing to the Plaintiffs for each hour the Plaintiffs worked in excess of 40 in any given week, but for which the Defendants failed to pay the Plaintiffs at a rate not less than one and one-half times his regular, hourly rate (in no case less than one and one-half times the IMWL's mandatory minimum rate);

    B. statutory punitive damages as allowed by the IMWL;

    C. interest on all amounts awarded;

    D. attorneys' fees, together with costs of suit and collection; and

    E. such further relief as may be fair and just in the premises.

## JURY DEMAND

The Plaintiffs demand a trial by jury of all issues set forth herein that are capable of being tried by a jury.

                                                      Respectfully submitted,

                                                      /s/Paul Luka
                                                      One of the Plaintiffs' Attorneys


Paul Luka
MENDOZA LAW, P.C.
120 S. State Street, Suite 400
Chicago, IL 60603
(312) 508-6010
paul@alexmendozalaw.com

# EXHIBIT A

## CONSENT TO BE A PARTY PLAINTIFF

The undersigned hereby authorizes and engages, MENDOZA LAW ~~the Law Office of Paul Luka,~~ P.C., to pursue his/her claims for unpaid wages, and other relief, against

JOSROS ENTERPRISES, INC., ABS BUSINESS ENTERPRISES, INC., ANTONY JOSEPH AND JOSEPH MATHEW,

and any other person/s who may have employed him/her in conjunction with said person/s (collectively the "Employers"), and by the signature below the undersigned hereby consents to be a party plaintiff in a lawsuit brought against the Employers on behalf of him/herself and all other similarly situated employees, known and unknown, pursuant to 29 U.S.C. 216(b).

_____
Signature

Jose Rodriguez
_____
Print Name

## CONSENT TO BE A PARTY PLAINTIFF

The undersigned hereby authorizes and engages, MENDOZA LAW ~~the Law Office of Paul Lukas,~~ P.C., to pursue his/her claims for unpaid wages, and other relief, against

JOSROS ENTERPRISES, INC., ABS BUSINESS ENTERPRISES, INC., ANTONY JOSEPH AND JOSEPH MATHEW,

and any other person/s who may have employed him/her in conjunction with said person/s (collectively the "Employers"), and by the signature below the undersigned hereby consents to be a party plaintiff in a lawsuit brought against the Employers on behalf of him/herself and all other similarly situated employees, known and unknown, pursuant to 29 U.S.C. 216(b).

_____
Signature

ANWAR ABUETHAN
_____
Print Name